UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

COMPLIANT PHARMACY ALLIANCE
COOPERATIVE,

        Plaintiff,                             **CASE NO. 18-CV-580**

        v.

AMERISOURCEBERGEN DRUG CORPORATION
and AMERISOURCEBERGEN CORPORATION,

        Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Compliant Pharmacy Alliance Cooperative ("CPA") brings this action for breach of contract, fraudulent inducement, and violation of Title 18, Chapter 96 of the U.S. Code, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), against Defendants AmerisourceBergen Drug Corporation ("ABDC") and AmerisourceBergen Corporation (individually, "ABC," and together with ABDC, "Amerisource").

## NATURE OF THE CASE

1.  This is an action for breach of contract, fraudulent inducement, and violation of RICO related to a cooperative purchase agreement with ABDC (the "CPA Agreement"), the first version of which CPA and ABDC executed in 2009, that defines ███████████████ ███████████████████████████████████████████████████████ ████████████ The CPA Agreement was intended to offer CPA a means of acquiring generic drugs at competitive prices through a partnership with ABDC known as the CPA PRxO Generics Partnership Program (the "CPA Partnership"). ████████████████████████████

1

███████████████████████████████████████████████████████████████
██████████████████

2.      ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████ █████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████

3.      ABC is among the largest wholesale drug distributors in the United States. In 2018, ABC ranked 12th on the Fortune 500 List with nearly $150 billion in annual revenue.

4.      ABDC is a wholly-owned subsidiary of ABC through which ABC operates its pharmaceutical distribution business.

5.      CPA is a member-owned, non-profit cooperative located in Stoughton, Wisconsin, consisting of several dozen employees. CPA represents over 1,700 member independent pharmacies. As a cooperative purchasing organization, CPA leverages its

prescription purchasing volume and compliance to provide cost savings to its members that they would not be able to obtain independently.

6. This case involves a calculated scheme to defraud whereby ABDC, with active support from ABC, artificially inflated ███████████████████ CPA was charged under CPA's ████████████ since at least 2013 in connection with the sale of products from ABC's wholly-owned subsidiary BluePoint Laboratories ("BluePoint"). ABDC implemented its scheme through the use of fraudulently inflated billings and relied upon the veneer of legitimacy created by its misrepresentation that it was actively negotiating pricing with a distinct entity, BluePoint, on CPA's behalf.

7. Generics manufacturers produce, package, and label product under the "BluePoint" label for BluePoint, which then provides such product to ABDC for distribution to individual pharmacies. "BluePoint" label products are only available through Amerisource and its subsidiaries.

8. Since the original 2009 CPA Agreement between ABDC and CPA, the CPA Partnership purportedly sought to optimize the value that generics could bring to CPA and its members through cooperation and transparency.

9. ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ██████████████████

10. Prior to 2013, ABDC actively and successfully negotiated with various manufacturers for the lowest possible ██████ As such, CPA and Amerisource enjoyed a

3

mutually beneficial relationship during this time period in which both parties benefited from the lowest possible ████████ being negotiated by ABDC.

11. However, when ABDC added BluePoint product lines to its primary generics source formulary in 2013, this situation changed. ABDC continued to negotiate the lowest possible ████████ on all non-BluePoint products, but did not obtain commensurate pricing in its negotiations with BluePoint, ABC's wholly-owned subsidiary. Rather, instead of negotiating with BluePoint in good faith on CPA's behalf, ABDC used those negotiations as part of a calculated scheme to maximize its own profits. As such, since 2013 BluePoint pricing has been largely immobile and is a significant outlier in an otherwise dynamic and highly competitive market. Additionally, unlike nearly all other generic drug families at ABDC and other national wholesalers, ████████████████████████████████████████████████ ██████████████████████████.

12. Since 2013, ABDC has intentionally undertaken a scheme designed to artificially inflate ████████████████████████████ with respect to BluePoint products, such that the price ABDC charges for BluePoint pharmaceuticals is not tethered to any market rationale. In many instances, CPA's ████████████████████████████ ████████████████████████—is much higher than the invoice pricing that is available on the open market and that is offered by ABDC to CPA's competitors.

13. As a result of the artificial overcharges on BluePoint products, Amerisource benefits through ████████████████████████████████ ████████████████. Specifically, recent discussions with Amerisource have revealed that BluePoint has operated under a cost model different than that of any other manufacturer in the CPA Partnership. ████████████████████████████████

4

████████████████████████████████████████████████

████████████ By engaging in self-dealing with BluePoint, Amerisource recognizes inflated profits through BluePoint under Ireland's low corporate tax rate. ████████████████████

████████████████████████████████████████████████

██████

14.     Defendant ABC, ABDC's parent company, had full knowledge of, and helped facilitate and conceal, the existence and purpose of BluePoint as a scheme to defraud CPA and its members, ABDC's ████████████████. CPA raised its concerns over BluePoint pricing with both ABC and ABDC on numerous occasions; however, personnel from both ABC and ABDC falsely assured CPA that they were and would continue to competitively manage BluePoint pricing.

15.     During contract renewal negotiations in 2015, CPA raised growing concerns with Amerisource regarding the pricing of BluePoint products which was significantly higher than the rest of the market. In ensuing negotiations in December 2015, Amerisource personnel such as Stephen Hendrickson at ABC's Pennsylvania headquarters specifically pledged that Amerisource would undertake a course of action to more actively manage the pricing of BluePoint product lines. In direct reliance on this specific representation by Amerisource, CPA entered into a new 2016 agreement ████████████████████████(the "2016 CPA Agreement").

16.     ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

17.     ████████████████████████████████

████████████████████████████████████████████████

5

18.

19.

20.

21.

On the contrary, after the parties

entered into the 2016 CPA Agreement, the disparity in BluePoint pricing increased. The data on BluePoint pricing and the pricing of the rest of the market objectively establish this fact.

22. ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████ ████████████████████████

██████████████████████████

23.     In sum, Amerisource has breached all of their representations to Plaintiff that it would actively manage and negotiate pricing, at arms-length, with ABC's wholly-owned subsidiary BluePoint. Since 2013, Amerisource has instead continued to pursue its scheme to artificially inflate BluePoint products well above competitive levels in the market and to recognize inflated profits under Ireland's low corporate tax rate, for the sole benefit of itself and its affiliate BluePoint.

24.     CPA therefore brings this action on its own behalf and as assignee of its members' claims for damages related to Amerisource's manipulation of BluePoint pricing.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction under 28 USC § 1332 because the amount in controversy exceeds $75,000 and Plaintiff and Defendants are citizens of different States.

26.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, because this action raises a federal question brought pursuant to RICO, 18 U.S.C. §§ 1961-1968, and has pendent and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

27.     Venue is lodged in this Court under 28 USC § 1391(b) and 18 U.S.C. § 1965 (RICO) because a substantial part of the events giving rise to the claim occurred in this district.

## THE PARTIES

28.     Plaintiff Compliant Pharmacy Alliance Cooperative is a buying cooperative with its corporate headquarters and principal place of business located at 170 Business Park Circle, Stoughton, WI 53589.  For over 25 years, CPA has leveraged its size and wholesaler contract compliance to save its individual pharmacy members substantial sums so that they can compete against larger pharmacy chains.  CPA has grown to represent over 1,700 members in 42 states through the United States with over $5.5 billion in annual wholesaler purchases.

29.     Defendant AmerisourceBergen Corporation is a massive wholesale drug distributor and is currently ranked 12th on the Fortune 500 list.  AmerisourceBergen Corporation is incorporated in Delaware, and its principal place of business is located at 227 Washington Street, Conshohocken, PA 19428.

30.     Defendant AmerisourceBergen Drug Corporation is a wholly-owned subsidiary of AmerisourceBergen Corporation through which AmerisourceBergen Corporation operates its pharmaceutical distribution business.  AmerisourceBergen Drug Corporation is incorporated in Delaware, and its principal place of business is located at 1300 Morris Drive, Chesterbrook, PA 19087.  AmerisourceBergen Drug Corporation is a signatory to the CPA Agreement.

## OTHER RELEVANT ENTITIES

31.     BluePoint Laboratories is a wholly-owned subsidiary of AmerisourceBergen Corporation, located at 8 Eastgate Avenue, Little Island, Cork, Ireland.  BluePoint provides pre-packaged, pre-labeled "BluePoint" product to Amerisource for further distribution.

## FACTUAL ALLEGATIONS

### A.    Background

32.    In 2009, CPA entered into the CPA Agreement, ████████████████ with ABDC to provide CPA members generic drugs at competitive pricing under the CPA Partnership.

33.    ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████

34.    The concept behind the CPA Partnership was to ████████████
████████████████████████████████████

35.    ████████████████████████████████████████████████
████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████
████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████

████████████████████████████████████████████
████████████████████████

36.    ████████████████████████████████████████████████

████████████████████████████████████████████████

9

37. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

38. In early 2013, the parties ███████████████████████████ through a "First Amendment to Cooperative Purchasing Agreement." In light of the CPA Partnership's success, the core components and intent of the program remained unchanged.

39. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**B.      BluePoint and the new 2016 CPA Agreement**

40.      In January 2013, ABC formed its Irish subsidiary BluePoint.  A few months later, ABDC began to include BluePoint product lines in the CPA Partnership.

41. From their introduction into the CPA Program, BluePoint products have been treated identically ████████████████████████████████████████████████ ████████████████████████

42. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

43. In 2015, the parties began to negotiate a new CPA Agreement for reasons initially unrelated to BluePoint. In the course of those negotiations, CPA raised its concerns with Amerisource regarding BluePoint products and ████████████████████████████████

████████████████

44. Over the course of the 2016 contract negotiations, Amerisource represented orally and in written correspondence that it would ensure that it would continue to negotiate with BluePoint on CPA's behalf in the exact same fashion as it does with respect to all other products under the CPA Partnership. Specifically, Amerisource ████████████████████████

████████████████████████████████████████████ on BluePoint products in-line with the overall market. In reliance on Amerisource's representation, CPA agreed to the new 2016 CPA Agreement, including new BluePoint terms, in January 2016.

45. The 2016 CPA Agreement contains an additional guarantee in favor of CPA. That provision provides that in the event ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

11

46.     Based on Amerisource's representation that it would competitively manage BluePoint product lines and that the basic principle for creating their own generic manufacturing label was to gain additional savings from the actual finished goods manufacturer through lower final costs, CPA expected that BluePoint products ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████

47.     Since the parties entered into the 2016 CPA Agreement, contrary to its express representations, Amerisource has continued its scheme ███████████████████████ ██████████████████████ As a result, the pricing on BluePoint products has worsened and, as shown by the data summarized below, fallen significantly farther behind the competitive levels of similar generic equivalent items in the market.

48.     In every quarter since the 2016 CPA Agreement went into effect, BluePoint products have fallen far short of ████████████████████████████████

49.     ████████████████████████████████████ ██████████████████████████████████

50.     ████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████

51.     ████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

52.     In the generics market, pricing for any given drug typically is extremely uniform regardless of the manufacturer, yet the pricing of BluePoint-labeled products under the CPA Partnership is a significant outlier. ████████████████████████████████



53.     ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



54.     The pricing of BluePoint products under the CPA Partnership is not just

inconsistent with the rest of CPA's portfolio but is also inferior to the pricing of BluePoint-

equivalent products on the open market. As of March 2018, more than ███ of BluePoint

products in the CPA Partnership—representing ███ of CPA's dollar sales on BluePoint

products—had an ███████ higher than the corresponding National Average Drug Acquisition Cost ("NADAC"), *i.e.*, a publically available figure representing the average of the drug acquisition costs submitted by retail community pharmacies for a particular drug.



55. ███████████████████████████████████████████████



████████████████████████████████████████████████

████████████████████

56.     Amerisource's calculated scheme results in ██████████████ to CPA.  For example, many CPA competitors (other Amerisource customers) can purchase BluePoint products at prices far below that offered under the CPA Partnership.  In some instances, ABDC charges other customers an invoice price less than ████████████████████████████

███████████████████████████

57.     By artificially inflating BluePoint pricing and failing to negotiate ███████████████ ████████████████████ in good faith on CPA's behalf, ABDC diminishes CPA's ability █ ████████████████████████████████████████████████

██████████████████

58.     █ ████████ ████ ████████ ██████ ██████ ████ █████ ██ ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████

59.     ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████

60.     CPA's discovery of the wrongful conduct alleged herein was delayed by the fraudulent concealment, deceptive acts, misrepresentations, practices and omissions and continuing conspiracy of Defendants and others.  CPA could not have discovered the illegal conduct at an earlier date by the exercise of reasonable diligence because of Defendants'

deceptive practices and techniques of secrecy and misinformation. As a result of the fraudulent concealment by Defendants, all applicable statutes of limitations have been tolled.

C.    **Recent Negotiations**

61.    Since the summer of 2017, CPA has raised the non-competitive pricing ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ of BluePoint products and the significant harm this clear breach of the 2016 CPA Agreement is causing CPA.

62.    The parties have had multiple in-person meetings in Philadelphia during which Amerisource has renewed its representations that they would negotiate, at arms-length, with their affiliate to ensure competitive pricing on BluePoint products. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



63.    In December 2017, despite all of its specific representations leading up to the execution of the 2016 CPA Agreement, Amerisource offered to better manage BluePoint pricing going forward, only if CPA agreed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Remarkably, within just three days of that proposal, Amerisource provided a list containing

64.    Amerisource's stunning proposal provides indisputable evidence of its calculated scheme to artificially inflate BluePoint pricing and that all along it has been in sole control of BluePoint ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

65.     An Amerisource representative, Robert Mauch, acknowledged this very fact when he and others admitted in these meetings that Amerisource's December 2017 proposal was "about optics, not economics"—*i.e.*, that the changes would not actually benefit CPA. CPA therefore rejected Amerisource's offer.

66.     On March 8, 2018, during the course of renewed negotiations, Rich Tremonte, Amerisource's President of Strategic Global Sourcing, admitted to Jay Blackburn, CPA's CEO, that Amerisource has manipulated the pricing of BluePoint products under the CPA Program. Specifically, Tremonte represented that ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████. During recent calls with Amerisource staff including Rich Tremonte, Kurt Ginter, Michael Nachman, and Justin Eisenhart, it has become very clear that Amerisource has artificially controlled ████████████████████████████████████████ of BluePoint products since 2013 as CPA has continually alleged. Specifically, during a call on April 9, Amerisource personnel referred to BluePoint product pricing as "bullshit pricing."

67.     ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

68.     ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

69. ████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████

**D. Defendants' Operation and Control of BluePoint**

70.　　Although nominally independent, Defendants effectively control ABC's wholly-owned subsidiary BluePoint and direct its business. As operated and controlled by Amerisource, BluePoint has no legitimate or commercially reasonable business purpose and provides no legitimate or commercially reasonable service to Amerisource. BluePoint does not manufacture or label any products itself; rather, it merely acquires products from other manufacturers at Amerisource's direction for the purpose ████████████████████████████

████████████████████████████████████████████████
██████████████████████████████████████████████ █
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

71.　　████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████

72. ████████████████████████████████████████████████

████████████████████████████████████████████████ BluePoint was designed to, and did, induce CPA to rely on ABDC's material misrepresentations, enter into the 2016 CPA Agreement with ABDC, place orders for BluePoint products from ABDC, and make payments to ABDC. Moreover, such reliance was reasonable under the circumstances because Amerisource intentionally used BluePoint to hide the scheme from CPA and concealed from CPA the true purpose of BluePoint.

73. ABC had knowledge of, and willfully participated in, the fraud. ABC personnel, together with ABDC personnel, intentionally misled CPA regarding the purpose of BluePoint and the process by which BluePoint pricing was determined, by representing that Amerisource would competitively negotiate with BluePoint on CPA's behalf. Amerisource thus actively concealed its unlawful conduct.

74. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Indeed, Amerisource's scheme defrauded not just CPA but also its 1,700 plus members.

75. On information and belief, between 2013 to the present, Amerisource engaged in thousands of separate fraudulent transactions in furtherance of its scheme by issuing thousands of fraudulently inflated billings ████████████████████████████████

████████████████

## COUNT ONE
(Breach of Contract against Defendant AmerisourceBergen Drug Corporation)

76. The foregoing paragraphs are expressly incorporated as if fully set forth herein.

77. Beginning in 2013 with the addition of BluePoint products to the CPA Partnership, ABDC has deprived CPA of the benefits of the contractual bargain set forth in the CPA Agreement by failing to negotiate in good faith with its BluePoint affiliate on CPA's behalf.

78. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████

79. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████

80. ███████████████████████████████████████████████████
████████████████████████████████████████████

81. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████

82. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████

83. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████

84.     Each of the above provisions contains an implied covenant that ABDC will establish ████████████████████████████████████████ ████████████████████ in good faith.

85.     ABDC has breached these provisions by engaging in self-dealing with respect to its BluePoint affiliate.  ABDC has acted intentionally, deliberately, or in reckless disregard of CPA's contractual rights.

86.     CPA has suffered financial damages as a result of ABDC's bad faith actions from 2013 to the present, which damages continue to accrue.

87.     Therefore, ABDC is liable to CPA for breaching the covenant of good faith and fair dealing that is an implied part of the above contractual provisions.

## COUNT TWO
(Fraudulent Inducement against Defendants)

88.     The foregoing paragraphs are expressly incorporated as if fully set forth herein.

89.     To induce CPA to enter into the 2016 CPA Agreement, Amerisource represented to CPA that it would use its market power to procure market competitive pricing on BluePoint products under the CPA Partnership.

90.     At the time it made that representation, Amerisource intended to deceive CPA.

91.     CPA's reliance on Amerisource's misrepresentation was reasonable, because Amerisource has shown that it is capable of using its market power to procure competitive pricing on other, non-BluePoint products under the CPA Partnership.

92. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

93.     Therefore, Amerisource is liable to CPA for fraudulently inducing CPA to enter into the 2016 CPA Agreement.

**COUNT THREE**
(Violation of 18 U.S.C. § 1962(c) (RICO) against Defendants)

94.     ABC and ABDC are "persons" within the meaning of 18 U.S.C. § 1961(3).

95.     BluePoint, together with ABC and ABDC, constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) (the "BluePoint Enterprise").

96.     The BluePoint Enterprise is an ongoing organization which engages in, and whose activities affect, interstate commerce.

97.     While ABC and ABDC have participated in and are members and part of the BluePoint Enterprise, they also have an existence separate and distinct from the enterprise.

98.     As set forth above, the BluePoint Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants have engaged.

99.     As set forth above, Defendants have controlled and operated the BluePoint Enterprise by, among other things, █████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████

100.    For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations, or promises, Defendants in violation of 18 U.S.C. § 1341 (relating to mail fraud) caused matter and

things to be delivered by the Postal Service or by private or commercial interstate carrier, and/or received matter and things from the Postal Service or private or commercial interstate carriers. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of the mails would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

101. Defendants carried out their scheme in different states and could not have done so unless they used the Postal Service or private or commercial interstate carriers.

102. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants in violation of 18 U.S.C. § 1343 (relating to wire fraud), transmitted, caused to be transmitted and/or received by means of wire communication in interstate and foreign commerce, various writings, signs, and signals. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

103. The matter and things sent by Defendants via the Postal Service, private or commercial carrier, wire or other interstate electronic media include, among other things, contracts and billings that intentionally misled CPA about the manner in which ABDC computed prices charged to it; billings that falsely and fraudulently misrepresented ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

104.    Other matter and things sent through or received from the Postal Service, private or commercial carrier or interstate wire transmission by Defendants included information or communications in furtherance of or necessary to effectuate the scheme.

105.    Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving CPA and obtaining CPA's property for Defendants' gain.

106.    Defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and CPA relied on the misrepresentations and omissions as set forth above.

107.    As a result, Defendants have obtained money and property belonging to CPA, and CPA has been injured in its business or property by the Defendants' overt acts of mail and wire fraud.

108.    Defendants, each of whom are persons associated with the BluePoint Enterprise, did knowingly, willfully, and unlawfully conduct or participate in the affairs of the BluePoint Enterprise through a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).  The racketeering activity was made possible by each Defendant's regular and repeated use of the facilities and services of the BluePoint Enterprise.  Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

109.    Defendants each committed or aided and abetted in the commission of at least two acts of racketeering activity, *i.e.* indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past ten years.  In fact, Defendants have committed thousands of acts of racketeering activity.  The acts of racketeering were not isolated, but rather had the same or similar purpose, participants, method of commission, and victims, including CPA.

110.   The multiple acts of racketeering activity which Defendants committed and/or conspired to or aided and abetted in the commission of, were continuous.  There is repeated conduct in an open and substantial period of time at least during the period from 2013 to the present, which conduct threatens to continue to occur in the future.

111.   As a direct and proximate result, CPA has been injured in its business or property by the predicate acts which make up the Defendants' pattern of racketeering activity through the BluePoint Enterprise.

112.   Specifically, CPA and its members have been injured in their business or property by having substantially overpaid for generic pharmaceuticals purchased from ABDC ███████████

███████████████████████████████

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, CPA seeks the following relief:

1. An award of compensatory and consequential damages, plus pre-judgment and post-judgment interest, in an amount to be determined at trial;

2. An award of punitive damages, in an amount to be determined at trial;

3. An award of triple damages, together with all reasonable attorneys' fees incurred in pursuing this claim;

4. Injunctive relief as is appropriate to ensure full performance by ABDC of its contractual obligations; and

5. Such other relief as the Court concludes is just and proper as a matter of either law or equity.

## DEMAND FOR JURY TRIAL

Plaintiff CPA demands a trial by jury on all counts and issues so triable.

Respectfully submitted,


/s/ Philip J. Iovieno
Nicholas A. Gravante, Jr.
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Tel: (212) 446-2300
ngravante@bsfllp.com

Philip J. Iovieno
Mark A. Singer
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street
Albany, NY 12207
Tel: (518) 434-0600
piovieno@bsfllp.com
msinger@bsfllp.com

*Attorneys for Plaintiff Compliant Pharmacy
Alliance Cooperative*

Dated:  July 24, 2018